WILLS (WILLIAMS v.).  See Case No. 17,746.

WILMARTH (MOAN v.).  See Case No. 9,686.

## Case No. 17,774.

### WILMARTH v. MOUNTFORD et al.

[4 Wash. C. C. 79.] [1]

Circuit Court, E. D. Pennsylvania.  April Term, 1821.

MALICIOUS PROSECUTION—PROBABLE CAUSE—LARCENY—SALE—TRANSFER OF PROPERTY—EFFECT OF NONPAYMENT.

1. When goods have been purchased, to be paid for on delivery, and instead of payment in money, a promissory note, which has been dishonoured, given by the owner of the goods, is offered in payment; the property of the original owner of the goods is not changed; although he might have taken them to the place where they were to be delivered, and there laid them down, expecting immediate payment in money for them.

2. Even the delivery of goods to a pretended purchaser, who makes off with the goods, does not change the property.

3. It is not necessary for the defendant to fix the crime of larceny on the plaintiff.  If by his folly or his fraud he exposes himself to a well grounded suspicion that he was guilty, this prosecution was founded on probable cause, which is a sufficient defence.

[Cited in Bacon v. Towne, 4 Cush. 239; Stone v. Stevens, 12 Conn. 225; Sherwood v. Reed, 35 Conn. 451; Grant v. Denel, 3 Rob. (La.) 17; Central Ry. Co. v. Brewer (Md.) 28 Atl. 618.  Cited in brief in Prough v. Entriken, 11 Pa. St. 83; Driggs v. Burton, 44 Vt. 140.]

4. There not being the slightest evidence against two of the defendants, the court directed the jury to find them not guilty, that they might be examined as witnesses for the other defendants.

Action for a malicious prosecution.  The plaintiff produced the record of the indictment in the mayor's court of this city for larceny, which the grand jury returned ignoramus. The plaintiff proved that the defendant, Mountford, put into the hands of a constable of the city a warrant to arrest the plaintiff on a charge of larceny, issued by Mr. Badger, one of the aldermen.  A search warrant for the goods supposed to have been stolen had previously been delivered to him, which proved ineffectual in the search.  Upon the first mentioned warrant the plaintiff was arrested, and taken before Mr. Badger, and, upon the examination of Mountford and Wentz, he was bound over to appear at the mayor's court, to answer to a charge of larceny; and it appeared by the alderman's docket that these

1 [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

two witnesses were held in fifty dollars each to prosecute. The plaintiff having arrested his case upon the above proof, the defendant's counsel moved that the jury should be directed immediately to find a verdict in favour of Wentz and Crowley, against whom there was not the slightest evidence given; with a view to their being examined as witnesses for the two other defendants. This motion was opposed upon the ground that there was some evidence against those defendants, particularly against Wentz, who appears, by the alderman's docket, to have been bound over to prosecute; and that the court never charges the jury to find an immediate verdict for a co-defendant, that he may be examined for the other defendants, if any, even the slightest evidence is given against him. Cases cited in favour of the motion, Peake, Ev. 152. Mr. Badger was called upon to explain the short entry in his docket, who stated, that the two witnesses were, in fact, bound over to appear as such, and not to prosecute; and that it has been his uniform and unvarying practice to bind over the witness to prosecute, instead of to testify.

BY THE COURT. There is no evidence against Crowley of any kind; and after the explanation given by Mr. Badger of the entry in his docket, the other defendant, Wentz, appeared as a witness merely, and as such was recognized to appear in the mayor's court. In that character, this action cannot be maintained against him. There is no evidence that he was a prosecutor, or that he voluntarily took any part in the prosecution. There is no evidence then, not the slightest, against this defendant, upon which the jury can possibly find him guilty. The jury therefore may at once find these defendants not guilty.

The jury found according to this direction, without leaving their seats, and Wentz was examined as a witness for the remaining defendants.

The following were the circumstances proved on the part of the defendants: F. Read, one of the defendants, becoming embarrassed in his circumstances, assigned over all his estate to the defendant Mountford and to Crowley, for the benefit of such of his creditors as should sign a release within sixty days; and possession was immediately delivered to the assignees. This assignment bears date the 16th of June, 1819, notice of which was published in Relf's Gazette, on the 18th. On the 21st of the same month, one Scholfield came to the store of Mountford, where the goods were kept for sale, and pretending that he was commissioned by a Mr. White of Virginia, to purchase for him goods of the description of those in the store; selected as many of them as amounted to about $480, and requested Mountford to pack and send them to his lodgings at Judd's tavern, where he would pay the cash for them. The goods, accompanied by a bill, in which White is made debtor to Mountford and Crowley, assignees of F. Read, were, on the same day, taken to Judd's tavern by Wentz, an apprentice of Mountford, with orders to receive the money or to bring back the goods, if the money should not be paid. Upon entering the room where Scholfield was, at the tavern, Wentz was desired to lay down the box on the ledge of the bar, which he did; Scholfield at the same time taking out his pocket book and opening it, as if to pay the money. At length he observed to Wentz, that there was a gentleman in the adjoining room who would settle with him for the goods, and that he would introduce him. Upon going into this room, the plaintiff was found sitting alone, to whom the bill was presented. In the mean time the goods were removed by the order of Scholfield. The plaintiff offered to the young man as payment, a note of F. Read's to himself, for rather a larger amount than that of the bill, and asked if that was not good? Wentz informed him that it was not; and that Read had nothing to do with the goods, having failed, and having assigned his estate to Mountford and Crowley for the benefit of his creditors. Scholfield soon left the room, and Wentz was unsuccessful in obtaining either a return of the goods, or payment for them. About this time, Mountford passed the tavern, and being informed by Wentz of the above circumstances, he called upon an attorney for advice, and was informed by him that the case amounted to larceny; upon which Mountford obtained from Alderman Badger a search warrant, which was put into the hands of a constable. The search proving ineffectual, a warrant was obtained for arresting the plaintiff upon a charge of larceny, by virtue of which he was taken, and bound over as before mentioned. When asked by the alderman his reason for having acted as he had done, the plaintiff replied that Read was indebted to him, and that he had resorted to this scheme to obtain payment. On a subsequent day, the assignee and the plaintiff called upon an attorney in order to arrange the business, when the plaintiff stated that he knew where the goods were, and that he could get them at any time. No arrangement however was made, as the plaintiff refused to return the goods except upon the terms of being permitted to come in under the assignment with the other creditors. The proposition the assignees could not accede to, without the assent of the creditors who had executed the release, the sixty days having then run out.

The defendant's counsel insisted that there was not only probable cause for the prosecution, but that the transaction amounted in law to larceny. That the property was not changed, and that the possession was obtained by an artifice, with intent to convert the goods to the use of the plaintiff against the owner's consent. Esp. 132; 2 East, P. C. 553, 674. They also denied that there was any evidence of malice.

C. J. Ingersoll and Mr. Phillips, for plaintiff.
Brown, Peters & Page, for defendants.

WASHINGTON, Circuit Justice (charging jury). This is an action for a malicious prosecution, and it is incumbent on the plaintiff to prove, not only that the prosecution was malicious, but that it was instituted without probable cause. Whether there was in this case probable cause or not, is a question for the court to decide; dependent, nevertheless, upon the opinion of the jury, whether the facts stated by the court as constituting probable cause have been proved or not. If there was probable cause for the prosecution, then the jury may presume malice, though no express evidence of it be given. In the case of Munns v. Dupont [Case No. 9,926], in this court, it was stated to the jury, that by probable cause is meant a reasonable ground of suspicion, founded on circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty of the imputed crime. To the definition given in this case, the court adheres.

The prosecution on account of which this action is brought was larceny, which is the wrongful taking and carrying away of the goods of another, with a felonious intent to appropriate them to the use of the taker, without the owner's consent. It will be proper in the first place to inquire, how far this definition is applicable to Scholfield? He commenced his operations with falsehood and artifice, with a view, as his subsequent conduct proves, to obtain the wrongful possession of the goods for his own use, or for the use of some other person, without accounting to the owner for the agreed value of them. It is not true, as was argued by the plaintiff's counsel, that the property in these goods was at any time changed, which by the contract was only to take place on the payment of the money. It was, by the express terms of it, a cash sale. The cash was not paid or tendered; and, consequently, the right of property was never divested out of the assignees. Neither was there a change of possession, with the assent, or by the act of the assignees, or of Wentz their agent. When at the request of Scholfield he laid down the goods, with the expectation, well warranted by Scholfield's actions, of receiving the money for them, they remained, constructively, in his possession; and to every legal intent they were as much in his possession as if he had placed them in his pocket. If a person go into a shop to buy a particular article, which is handed to him by the shopkeeper to examine, and he makes off with it, the delivery of the article would not constitute a change of property or possession; and the carrying away of the goods would, in such a case, be evidence of a felonious intent, formed at the time, or before, to convert the goods to the use of the taker, and would amount to larceny. It is true, that in this case, the possession of the goods was lost by Wentz; but it was taken, not transferred by him, which constitutes one of the ingredients in larceny. In short, here was a wrongful taking and carrying away of the goods of another, with a felonious or fraudulent intent to convert them to the use of the taker, or of some other person, against the consent of the owner; and if, upon the trial of Scholfield, the opinion of the jury, as to the intent, should be as I have stated it, it would not have been an easy matter to extricate him from the charge of larceny. How then stood the case as to the plaintiff? He and Scholfield boarded at the same house. That they were acquainted, and had, previous to the pretended purchase for White, made some arrangement which they were subsequently to carry into effect, is obvious, not only from the circumstance of Scholfield's referring Wentz to the gentleman in the next room, as the person who would settle with him, but from the acknowledgement of the plaintiff himself to the alderman, that the scheme was resorted to for the purpose of getting payment of the debt due to him by Read. The plaintiff did not offer to pay for the goods; because the offer of a note of an insolvent debtor was no compliance with the contract made by Scholfield; and besides, it was refused.

It was contended for the plaintiff, that the transaction resolves itself into a claim of property; a creditor obtaining possession of the goods of his debtor, to compel the payment of a just debt. This argument is not supported by the facts of the case. Before this transaction took place, the goods in question had been assigned by the plaintiff's debtor to Mountford and Crowley, for the benefit of his creditors. The contract was made with the assignees. The bill which was presented to the plaintiff so stated it, and Wentz informed the plaintiff that the goods did not belong to Read, who had failed, but to his assignees. Suppose then that a creditor might legally seize his debtor's property, or get possession of it by artifice, and so pay himself, which cannot be admitted; still the argument would lose all its weight in this case, inasmuch as the property in these goods was completely changed, and that fact known to the plaintiff.

Again, it is insisted that the assignment was void by the act of assembly of this state, on account of its not having been recorded within thirty days. To this argument there is this conclusive answer given by the defendant's counsel. The assignment was valid at the time when this transaction took place, the thirty days not having run out; and on the 21st of June, 1819, the assignees were the owners of the goods, and might have sold and transferred a legal right to them, which the subsequent failure to record the deed could not set aside. Besides, the possession had passed from Read to the assignees, and was vested in them at the time when this transaction took place. If then the evidence is sufficient to connect the plaintiff with Scholfield, in the original concoction of a scheme founded in deceit, and contrived for the purpose of feloniously or fraudulently obtaining the possession of the goods of the assignees,

and appropriating them to his own use, without paying the sum at which they were agreed to be sold; it would be difficult to distinguish the plaintiff's case from that of Scholfield's. But it is not necessary that the crime of larceny should be fixed upon the plaintiff. If, by his folly or his fraud, he exposed himself to a well grounded suspicion that he was guilty of that offence; the prosecution had, at least, probable cause for its basis, and this is sufficient to defeat the present action.

Verdict for defendant.