## HARRIS v. MAULDIN, ET ALS.

1. One or more of several wrong doers, against whom nothing is proved, may be acquitted, and examined as a witness for his co-defendants; but where the least evidence is given against one of several wrong doers, who is sued jointly, he cannot be discharged on the trial, for the purpose of being examined as a witness.

Error to the Circuit Court of Talladega. Judgment by his Honor George W. Stone.

CASE for a malicious prosecution, by the plaintiff in error, against the defendants in error. The questions presented, arise out of a bill of exceptions, and present the following facts: The defendant Mauldin, sued out, and obtained a warrant to arrest the plaintiff, for an assault with intent to murder him; and it was in proof that Mauldin procured one Miller, to go with him and one Coley, six miles to get the warrant. That they left after night, got to the magistrate's near 10 o'clock at night, and obtained the warrant, Miller

being deputed to act as constable. That Mauldin, and Miller, went to the house of defendant Simmons, and woke him up, and at Miller's request he went with them, two miles and a half, to point out the plaintiff to the constable, to whom the plaintiff was unknown. That Simmons went with them, to where the plaintiff had camped with his wagon, woke him up, and he was arrested by the constable. The defendants Burns, and Dobbins, lived more than twenty-five miles from Mauldin's, but were at Mauldin's house, where Mauldin, Miller, and Coley, set out to obtain the warrant, and were acquainted with the plaintiff.

It was in proof, that the difficulty between the plaintiff, and Mauldin, grew out of a claim which the former asserted to a slave, which the latter had hired to the defendant Burns, and which Burns delivered up to the plaintiff on his demand. Burns and Dobbins were with Mauldin, when the latter attempted to take the negro from the plaintiff, which he prevented, by raising an axe. Dobbins and Burns were both present at Mauldin's house the next morning after the arrest. Dobbins and Mauldin both told the plaintiff, that if the warrant was pushed it would send him to the penitentiary.

On the way to the justice of the peace, they stopped at Simmons's house, and Mauldin, alledging that he was sick, or drunk, went to bed. Burns and Dobbins informed the plaintiff, that Mauldin had authorized them to settle the prosecution, if he would give up the bill of sale to the slave in controversy, and make a deduction upon a note which he held against Mauldin. This was done, and the constable entered on the warrant, satisfied by consent of parties. The plaintiff was a resident of Georgia.

The defendants' counsel then insisted, that there was no evidence against Burns, Dobbins and Simmons, and that they desired to examine them as witnesses, and prayed the court to discharge them. The court refused to discharge them, but held, that there was no proof against Burns and and Simmons, and instructed the jury to find a verdict of not guilty as to them; to which the plaintiff excepted. Burns was then introduced as a witness for the defendants, and the plaintiff again excepted.

These matters are now assigned as error.

S. F. RICE and J. T. MORGAN, for plaintiff in error.

1. In Alabama, the presiding judge has no power to non-suit a plaintiff, either as to all the defendants, or as to a portion only of the defendants. And he cannot direct an acquittal by one of several tortfeasors, because that is equivalent to a non-suit as to such tortfeasar. 5 Ala. Rep. 341.

2. There was evidence showing that Burns, Dobbins and Simmons, were engaged in the malicious prosecution of the plaintiff, and were aiding and assisting Mauldin to deprive him of his liberty, in order to force him into a compromise of his rights; and however slight the evidence was, the court could not lawfully compel the jury to acquit them, even if our practice allowed a judge in any case to direct a non-suit. Brown v. Howard, 14 Johns. Rep. 119.

3. If the warrant was maliciously sued out by Mauldin, and the arrest was malicious, all the acts done by Simmons, Burns and Dobbins, with a view of assisting Mauldin in the prosecution of his designs, if done with malice, or without reasonable or probable cause, render them equally liable to the action, as if they had procured the issuance of the warrant. Clifton v. Grayson, 2 Stew. R. 412, and cases there cited.

4. Simmons got up out of his bed, and went two miles, and actually put Harris in custody, under the guise of presenting him to the constable as an acquaintance. Simmons and Dobbins told Harris that if the case was prosecuted it would send him to the penitentiary. Burns and Dobbins were both present when the difficulty occurred, in which Harris drew his axe; were present when Harris was arrested at Mauldin's house—and Burns and Dobbins settled the prosecution upon the unjust terms stated in Rucker's deposition. All their conduct evinces a preconcerted plan to put Harris in duress, under process sued out without cause, and to compel him to buy out the prosecution at a great sacrifice. These are the highest evidences of malice.

L. E. PARSONS, for defendants, referred the court to 3 Phil. Ev. 1552; 6 J. J. Marsh. 53; 6 Car. & Payne, 213.

COLLIER, C. J.—It is said to be an indisputable rule, that

one or more of several wrong doers, against whom nothing is proved, may be acquitted and examined as a witness for his co-defendants. Rigdon's Heirs v. Rigdon's Devisees, 6 J. J. Marsh. Rep. 53; State v. Shaw, 1 Root's Rep. 134; Barney v. Cutter, Id. 489; Wakeley v. Hart, 6 Binn. Rep. 316; Brown v. Howard, 14 Johns. Rep. 119; Van Dusen v. Van Slyck, 15 Id. 223; State v. Blennerhassett, Walker's Rep. (Miss.) 7; Bates v. Conkling, 10 Wend. Rep. 389; Gilmore v. Bowden, 3 Fairf. Rep. 412; Sawyer v. Merrill, 10 Pick. Rep. 18; Wynne v. Anderson, 3 Carr. & P. Rep. 596; Child v. Chamberlain, 6 Id. 213; King v. Baker, 2 Adolp. & E. Rep. 333; Carpenter v. Jones, 1 Mood. & M. Rep. 198; Wright v. Paulin, 1 Ryl. & M. R. 128; Wilmarth v. Mountford, et al. 4 Wash. C. C. Rep· 79; Lanning's Lessee v. Case, et al. Id. 169; Schermerhorn v. Schermerhorn, 1 Wend. R. 119. But where the least evidence is given against one of several wrong doers who is sued jointly, he cannot be discharged on the trial, for the purpose of being examined as a witness. The want of evidence against a party, it has been said must be so glaring and obvious, as to afford strong grounds of belief, that he was arbitrarily made a defendant to prevent his co-defendants from availing themselves of his testimony. In Brown v. Brown, *ut supra*, which was an action of trespass against the captain of a vessel and two others, for an assault and battery on the plaintiff, who was a seaman on board the vessel, it was proved that the two other defendants, who were the mates of the vessel, tied the plaintiff, whom the captain had beaten: *It was held,* that the evidence against the two defendants was such, that they were not entitled to an acquittal for the purpose of being examined as witnesses for the captain. The cases cited do not perhaps lay down a less restricted rule than this decision affirms.

The question to be determined is, does the evidence recited in the bill of exceptions, implicate Burns and Simmons in the supposed tort of Mauldin, so that the circuit judge could not with propriety have directed their acquittal for the purpose of making them witnesses for Mauldin. In order to solve this inquiry, it is necessary to examine the facts. First, then, in respect to Simmons, he was awakened at a late hour of the night by Mauldin and the constable, went with them

at their request two miles and a half to point out the plaintiff to the constable—he accordingly awakened Harris, while the latter was sleeping in his own wagon, invited him to the camp fire under the pretence of talking with him, and there introduced him to the constable, who took his hand and executed the warrant. In addition, it may be stated that Simmons was a man of family, and the slave whom the plaintiff had taken into his possession, was, at the time all this occurred, at his (Simmons's) house. Simmons was present at Mauldin's house when the plaintiff was carried there, the morning after his arrest. As the constable, with Mauldin and others, was going professedly to the justice of the peace who issued the warrant, they stopped at the house of Simmons, where Mauldin went to bed, saying, either that he was drinking or sick. There the prosecution was compromised, and the plaintiff suffered to go at large, though Simmons does not appear to have had any direct agency in the compromise.

Burns, it seems, was the hirer of the slave from Mauldin, and delivered him to the plaintiff previous to the institution of the proceedings against the latter, and was at Mauldin's house when Mauldin went for the warrant, and remained there until the next morning. He was in company with Mauldin when the latter had an angry controversy with the plaintiff in respect to the right to the slave on the evening before the arrest. Burns was also at Mauldin's house when the plaintiff was taken there in the custody of the constable; and was present at Simmons's, and an active agent of Mauldin in settling the prosecution against the plaintiff.

The mere recital of the facts is quite sufficient to show that Simmons and Burns were not so wholly disconnected with the matter complained of, as to authorize their discharge and examination as witnesses. Whether they were associated with Mauldin, encouraged, aided, or prompted him to prosecute the plaintiff—the motive of their presence upon the several occasions referred to, and the *quo animo* with which they acted were properly referable to the jury; and could not have been determined by the court. In directing, therefore, a verdict of acquittal as to these defendants, the cir-

cuit court erred. The judgment is reversed, and the cause remanded.

Judge CHILTON not sitting.